IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-2973-WJM-KMT

KRISTIN WILCZYNSKI,

  Plaintiff,

v.

LOYAL SOURCE GOVERNMENT SERVICES, LLC,

  Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Plaintiff Kristin Wilczynski ("Wilczynski") brings a wrongful discharge action under a federal whistleblower statute, 10 U.S.C. § 2409, against her former employer, Defendant Loyal Source Government Services, LLC ("Loyal Source"). (ECF No. 14.) The relevant portion of the statute reads as follows:

> An employee of a contractor [with the Department of Defense] . . . may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to [a Department of Defense employee responsible for contract oversight or management] information that the employee reasonably believes is evidence of the following:
>
> (A) Gross mismanagement of a Department of Defense contract or grant, a gross waste of Department funds, an abuse of authority relating to a Department contract or grant, or a violation of law, rule, or regulation related to a Department contract (including the competition for or negotiation of a contract) or grant.
>
> * * *
>
> (C) A substantial and specific danger to public health or safety.

10 U.S.C. § 2409(a)(1). Wilczynski contends that she was discharged at the Air Force's behest, in violation of the statute, for complaining about a change in how primary care doctors' referrals to specialty practitioners were handled at the various military installations in and around Colorado Springs.

Currently before the Court is Loyal Source's Motion to Dismiss. (ECF No. 15.) For the reasons explained below, the Court denies the motion.

## I. RULE 12(b)(6) STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

## II. BACKGROUND

The Court accepts the following as true for purposes of resolving Loyal Source's

motion.

Wilczynski is an administrative nurse.  (¶ 1.)[1]  She worked for Loyal Source from at least 2012 until early 2016.  (¶¶ 1, 4.)  Beginning in 2012, her role at Loyal Source was to

> process[] complex medical referrals, ASAP [*i.e.*, urgent] medical referrals, or both at the same time, for patients within the military treatment facilit[ies] at the [four major military installations in and around Colorado Springs: Peterson Air Force Base, Schriever Air Force Base, the Air Force Academy, and Fort Carson].  It was her job to handle requests by primary medical providers whose patients, military personnel and their families, needed specialized treatment and to refer these patients to specialists within the military's medical system.

(¶¶ 4, 6.)  She usually handled about 130 referrals per week.  (¶ 5.)  Although employed by Loyal Source, she worked at Peterson Air Force Base and her on-site supervisors were Air Force officers.  (¶¶ 4, 7.)

Beginning in late December 2015, Wilczynski noticed that her referral queue had become much shorter, with between zero and two new referrals per day—far off the 130-per-week pace.  (¶ 9.)  In early January 2016, she began receiving fifteen or more phone calls per day from patients and referring doctors, complaining about referrals that had stalled.  (¶ 10.)

When this pattern continued into mid-January, Wilczynski raised the issue with the chief of the medical staff at Peterson Air Force Base, who responded that she "would look into it."  (¶¶ 7, 12.)  Wilczynski then spoke to the civilian director of the medical referral center, who was surprised that Wilczynski had never been told that the

---

[1] All "¶" citations, without more, refer to the Second Amended Complaint (ECF No. 14), which is the currently operative complaint.

3

process for complex and ASAP referrals had changed. (¶¶ 13–14.)  Specifically, those referrals were now being sent to enlisted or civilian clerks. (¶ 14.)  None of these clerks had a nursing degree, nor the experience needed to know where to send the patients. (*Id.*)

Investigating further, Wilczynski discovered that a new referral queue had been created to handle the referrals she previously received. (¶ 15.)  Wilczynski examined that queue and "could see that there were several hundred backlogged referrals." (*Id.*)  Frequently, referrals in the new queue would be returned to the referring physician or they would be closed. (¶ 16.)  Returned referrals would usually prompt the physician to call Wilczynski, and closed referrals would usually prompt the patient to call Wilczynski. (*Id.*)

On January 15, 2016, Wilczynski told "the chief nurse" (a lieutenant colonel with the Air Force) that the referral backlog was affecting approximately 5% of a patient population of about 25,000, meaning that up to 1,250 patients "were getting no care or care[] delayed more than . . . 28 days, which delay was not allowed under the Air Force rule." (¶ 17.)  The rule in question is not specified.

Ten days later, the "Chief of Staff" (also an Air Force lieutenant colonel) instructed Wilczynski to go ahead and process referrals that were more than twenty-eight days old. (¶ 18.)  Wilczynski "said she could not do this because it would be a policy violation under the Air Force rules.  Ms. Wilczynski knew that, at the very least, she would have to check with the originating primary medical provider to see if the referral was still needed." (*Id.*)

On February 5, 2016, Wilczynski spoke with her Loyal Source supervisor. (¶ 19.)

The supervisor informed her that the Air Force had submitted an "unsatisfactory" monthly report regarding Wilczynski. (*Id.*) Wilczynski responded by explaining what had happened in the previous month. (*Id.*)

On February 16, 2016, Wilczynski spoke to yet another of her Air Force supervisors about the recent change, stating that "because of the change, . . . numerous patients were not receiving, or receiving delayed, specialist care." (¶ 22.) The supervisor responded by again explaining the new referral queue process. (¶ 23.)

On February 22, 2016, Wilczynski made an oral complaint to the Inspector General at Peterson Air Force Base "that the process change was grossly mismanaged and that there were delays in patient care creating a substantial and specific danger to the patients' health or safety, including to the health and safety of civilian family members." (¶ 24.) On February 26, 2016, Wilczynski's Loyal Source supervisor told her that "she was terminated because Peterson Air Force Base personnel wanted her removed." (¶ 26.)

Wilczynski's complaint to the Inspector General continued to move through its own process, however. (¶ 27.) "The Inspector General for the Department of Defense issued its report on May 23, 2017, denying Ms. Wilczynski's claim and finding that she had made no 'protected disclosure' under 10 USC §2409 and, hence, there could have been no reprisal against a 'protected disclosure.'" (*Id.*)

### III. ANALYSIS

**A.  Documents Outside the Pleadings**

Loyal Source attaches the Inspector General's May 2017 report to its Motion to Dismiss (ECF No. 15-1), and requests that the report be considered a part of the record for purposes of resolving the Motion to Dismiss (ECF No. 15 at 2 n.2). The Court may

5

consider a document outside the pleadings, even in a Rule 12(b)(6) analysis, if the document is (1) "mentioned in the complaint," (2) "central to [the] claims [at issue]," and (3) not challenged as inauthentic. *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013).[2]

The Inspector General's report is mentioned in the complaint (¶ 27) and Wilczynski does not challenge it as inauthentic (*see* ECF No. 17 at 4). However, it is not clear that it is central to the claims at issue. Undoubtedly, the events *discussed* in the report are central to the claims at issue, but Loyal Source makes no argument that the *report itself* has any legal effect simply by virtue of being an Inspector General report. Loyal Source does not argue, for example, that the Inspector General's factual findings have issue-preclusive effect, or that its legal conclusions have claim-preclusive effect, or that the report shows some limitation on the scope of administrative exhaustion, or that the Court must defer to the Inspector General's interpretation of the whistleblower statute. The Court therefore will not consider the Inspector General's report as part of the pleadings.

**B.     Contractor Status**

On the merits, Loyal Source first argues that "there is no allegation in the Second Amended Complaint that Loyal Source was a contractor or subcontractor for the Department of Defense." (ECF No. 15 at 4.) Loyal Source is correct that the only explicit allegation in this regard is that Loyal Source is "a contractor with the United

---

[2] "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997); *see also Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 923 (N.D. Ill. 1999) ("it would be totally wasteful to uphold a claim on the false premise created by less than complete documentation when the delayed consideration of the remaining documents would lead to dismissal of that claim").

States government." (¶ 2.)  However, the remaining allegations of the complaint create a strong inference, if not a virtual certainty, that Loyal Source was a Department of Defense contractor.  It is difficult to imagine how it could be anything but, given that it was a private entity providing services to an Army base, two Air Force bases, and a service academy.  (*See* ¶¶ 4, 6–7.)  The Court therefore rejects this argument for dismissal.

**C.     Protected Disclosure**

Loyal Source's second (and final) argument is that Wilczynski reported no gross mismanagement or substantial and specific danger to public health or safety, so she reported nothing protected by the whistleblower statute, 10 U.S.C. § 2409(a)(1).  (ECF No. 15 at 4–5.)  However, Loyal Source simply declares this to be so, citing no case law on how the Court should construe obviously flexible terms such as "gross mismanagement" or "substantial and specific danger."  The only authority, so to speak, that Loyal Source cites is the Inspector General report (*see* ECF No. 15 at 5), but the report likewise cites no supporting authority (*see* ECF No. 15-1 at 8–9), and, regardless, the Court has already refused to consider it as if part of the pleadings because it is not clear that it has any binding or even persuasive effect on this lawsuit.

Even if the Inspector General report has no binding or persuasive effect, Loyal Source could have legitimately argued, "The Inspector General's conclusions were *correct* because . . . ."  But Loyal Source makes no such argument.[3]  Rather, Loyal

---

[3] The statute in question has not received much interpretation in the case law, but it mirrors the language of other whistleblower statutes that have received more attention, such as the Whistleblower Protection Act, *see* 5 U.S.C. § 2302(b)(8)(A)(ii), and the Civil Service Reform Act, *see* 5 U.S.C. § 2301(b)(9)(B).  In other words, Loyal Source's failure to provide authority cannot be explained by a simple lack of relevant authority to cite and discuss.

Source seems to argue something to the effect of, "The Inspector General found that Wilczynski's claim lacks merit, so the Court should too." (*See* ECF No. 15 at 4–5; ECF No. 20 at 5.)

On the arguments presented, the Court cannot hold that the Inspector General report has any material effect on whether Wilczynski made a protected disclosure as a matter of law. Nor do the words of the statute so clearly exclude Wilczynski's complaints that the Court can hold, without further analysis, that she failed to make a protected disclosure. The Court therefore rejects this argument from Loyal Source.

### IV. CONCLUSION

For the reasons set forth above, Loyal Source's Motion to Dismiss (ECF No. 15) is DENIED.

Dated this 16th day of July, 2019.

BY THE COURT:

_____
William J. Martinez
United States District Judge